22-17-41 Good morning, your honors. May it please the court. Josh Halperin on behalf of Ateres Bais Yaakov. I'd like to reserve three minutes for rebuttal. The defendants in this case engaged in a coordinated anti-Semitic conspiracy to prevent an Orthodox Jewish girls' school from joining the Town of Clarkstown. George Homan, the Town's highest-ranking political official, worked hand-in-glove with a group that calls itself Citizens United to Protect Our Neighborhood, and that was created for the sole purpose of preventing Ateres from acquiring the Grace Baptist Church. Why do you have standing? We have standing because every step in the defendants' discriminatory scheme inflicted stigmatic harm on us and caused us economic injury. Homan, his building inspector, and Kupon executed their conspiracy in two stages. First, they blocked Ateres from closing by threatening it with search warrants, thwarting its financing, and denying its permit application on manifestly pretextual grounds. At the same time, they lured the church away from Ateres and toward the town by declaring publicly and repeatedly the town's enduring interest in securing this property for itself. That carrot-and-stick conspiracy left the church with only one rational course of action— terminate the contract with the disfavored applicant and sell the property to the town instead. As the Anti-Defamation League explains in its amicus brief, that was a textbook case of religious discrimination, and the district court erred in dismissing our claims for lack of standing. I'll start with finality and then turn to— Religious discrimination claims, even when they involve property, it sounds like the argument you're leading with here, which is your second in the brief, I think, is that the Williamson County finality requirement is inapplicable. Your dignitary harm argument gives you standing to come into court. So I would say that our first argument is even assuming that the finality requirement applies. It's satisfied by the Zoning Board's jurisdictional determination not to consider Ateres' variance request. We'll get to that in a second, but I want to understand your legal argument on this in a second. Sure. So we actually have another argument before we get to finality doesn't apply at all, and that's that further pursuit of the land use process would be futile by virtue of the fact that the Zoning Board declared that it wouldn't consider the variance request on its merits. But turning to the question of whether the finality requirement applies to our religious discrimination claims, we think it doesn't because the injury underlying those claims was complete as soon as Homan and his building inspector and coupon compelled the church to revoke the contract. And so the injury is independent of any subsequent final decision. When exactly did that happen? What triggers the, what's the relevant event? It's the revocation that was prompted by the carrot and stick conspiracy that I described a moment ago. And that revocation occurred before the Zoning Board issued its jurisdictional determination. How is a withdrawal, in your words, compelled? Sure. So there were two aspects to this conspiracy. One was block a terrace by thwarting its financing and denying its permit application, and the other was luring the church away from a terrace by holding out the town as the only plausible alternative purchaser of the property. Homan knew that the church needed to sell the property. All he needed to do was inject enough uncertainty into this process to assure that the church would turn away from the disfavored applicant and turn instead to the party that pulled all the levers of power in this town. And that's precisely what happened. Now, if I could just turn back a moment to Judge Park's question. Now, it makes no sense to apply a finality requirement to claims like these. It would serve no rational purpose because- It'd be futile, I think is what you're saying. That's another way to put it, Your Honor. And I'm joking a little, but it does seem to me that, I mean, at least as I understand the finality argument, it just feels a lot more like a futility argument. And I suppose my question is this. Structurally, if we concluded futility, we don't need to resolve either finality or stigmatic harm or any of the other arguments, do we? That's exactly right, Your Honor. And the main point here is that all roads lead to federal court. Whatever doctrinal pathway this court chooses to apply, whatever label you choose to affix to what happened here, the claims must be reviewable. And that is so important because, as the Anti-Defamation League explains, municipalities across this region have been weaponizing the land use process to discriminate against Orthodox Jews. If the district court's decision is allowed to stand here, it will serve as a blueprint for municipalities in future cases to insulate that discrimination from judicial review by forestalling final decision and imposing myriad jurisdictional limitations on the zoning board's authority. The other side's only response to this insulation problem is that the church could proceed with the variance request. But they never explain why the church would have standing to vindicate a terrorist's civil rights claims in court. But more fundamentally, their response ignores the fact that buying off the church was half of this conspiracy. There was a carrot and a stick. The stick was threatening search warrants against the terrorist as if it were a common criminal and denying its permit application on manifestly pretextual grounds. But the carrot was the implied commitment that the town would be there to swoop in and acquire the property the moment the church revoked the contract. And that is precisely what happened. And that's why this is a much easier case than Department of Commerce v. New York. Because in that case, the Supreme Court made a predictive, forward-looking judgment about how non-citizens would react to the inclusion of the citizenship question on the census. But there is no need to speculate here because we know what happened. What happened is precisely what the defendants intended. I think on both finality and futility, I agree they seem to go hand in hand. I mean, under the totality, it seems like there is a final decision because of how things have turned out or it was futile in retrospect. But can you kind of try to identify at what point in time? Because to the extent that we say something about this, there has to be a standard for when something is final or when it's futile. And it's hard to kind of delve into this and figure out when precisely that happened. Sure. I think the simplest way to resolve the case is to say that the zoning board's determination that it lacked jurisdiction to consider the variance request on the merits was final because the board clearly intended for that to reflect its last word on the application. What was the date on that? The date? That was in July, several months. July 2020, several months after the, or perhaps 2019. But several months after the revocation. And so that would be under taking the Williamson County standard. That would be the sort of event that triggers finality. That's right. But as a matter of first principles, I think it really makes very little sense to apply finality on these facts. Where the injury is complete and the claim for relief can't be affected by a subsequent final decision. The only effect that applying finality on facts like these would have would be to insulate substantial claims of discrimination from judicial review. That is not what the Supreme Court contemplated in Williamson County, which of course was a takings claim and not a claim for religious discrimination. Thank you. Thank you. Thank you. Good morning. Eliza Scheibel from Wilson-Elser for the town defendants, Town of Clarkstown and George Homan. We are asking this court to affirm the district court dismissal of all claims against the town defendants for lack of standing. This is not a case about a land use applicant that made repeated applications to a municipality over years, only to be thwarted at every turn or subjected to new never-ending requirements. That is not this case. This is a case about a land use applicant that never completed the land use approval process of its initial application for a variance and never obtained a final decision on that variance. This makes its claims unripe. It's straightforward application of the ripeness law and final decision requirement. ABY's failure to complete that process is not fairly traceable to the town. The ZBA never denied its application and never did the ZBA indicate that it was going to deny the variance application. Grace Baptist Church, the owner of the property, terminated its contract with ABY. There is no allegation that the town was in communication or coercing Grace Baptist Church. It then revoked its permission for the variance application. Well, the town bought the property moments later.  I think that's a- It sent over a building inspection was exchanged moments later, was it not? Grace Baptist Church, I believe, emailed or contacted the town around the same time that it terminated the contract because years earlier it had been in discussions with the town about purchase of the property. Grace Baptist Church's decision to terminate its contract and contact the town is not attributable to the town. There's no allegation that the town directed Grace Baptist to do that. This is an independent actor with its own discretion. I don't know whether its conduct had a predictable effect. So, as I see it, the action taken by the town includes signaling opposition to the school and encouraging residents to voice complaints, conspiring as alleged with coupon, incorrectly denying permit and creating the survey requirement. I think the question is if it's plausible that the loss of the contract was a predictable effect of those actions. So, we disagree with the predictable effect test here and believe that the district court did apply the correct test with the determinative and coercive standard given the attenuated chain here. But even if we're applying a predictable effect test, it's not predictable that a property owner is necessarily going to terminate a contract that they have repeatedly agreed to extend while the variance application is pending and the town has just confirmed that they're going to hear that application as soon as it's complete. So, the reason for the extended delay here was not attributable to the town. If this is a predictable effect, it means that the buyer just bides its time, doesn't pursue its application. The town responded promptly to everything that was submitted. And then when it fails to complete its closing date and the buyer terminates or the seller terminates the contract, it's generated manufactured ripeness without completing the process that it had the opportunity to complete. The town did not in any way stop or put up obstacles to ABY going through its standard variance application process. What role, if anything, in your view did anti-Semitism play in these events? I don't think there's any plausible allegation that anti-Semitism played any role with respect to the initial denial of the building permit application and instruction to get a variance. It played no role, no allegation of a role with respect to the town's actions. Did it play any role at all in your view? Any role with respect to what? I mean, they've certainly included- With respect to this case. They have allegations in their complaint, but- I know that, so I'm asking about your response to that. My response is that there is no plausible allegation that- Of anti-Semitism playing any- Of anti-Semitism causing the cancellation of the contract or the denial of the initial building inspection. The frustration of a terrorist's attempts to buy the property and use it as a school. Correct, Your Honor. I don't think that's what occurred, or I don't think that's what the allegation showed. The allegation is that Grace Baptist canceled the contract after a terrorist repeatedly failed to meet the closing deadline. That's not something in the town's control or that's attributable to the town. When they submitted a building permit application two months after entering the contract and only five days before the closing date, the town responded within the normal amount of time and told them they needed to apply for a variance, which was the same thing they had told them back in November. A terrorist- So this is a regulatory case with no, in your view, this is a garden variety regulatory case with no discriminatory overtones. Is that your view? I think to the extent they are alleging discriminatory overtones, that is no different than the other land-use cases where this court has held that the land-use determination is not right. There were allegations of religious discrimination in the Islam Community Center case. There were allegations of religious discrimination in the Murphy case. In both of those cases, the court said that the final decision rule still applies. There were allegations of disability discrimination in Sunrise. There were allegations of racial discrimination in the Village Green case, where the court still said that the final decision rule applies. So I don't think there's any basis for the argument, their independent injury argument, somehow excusing them that would eviscerate all of those prior cases that have not been called into question. As those cases note, the variance could be granted. We don't know how it would be applied here or if there is any injury. The allegation was infringement of free exercise rights from the inability to put a school there. And I also don't think there's any allegations, plausible allegations in the complaint of discrimination by the town that would give rise to stigmatic injury. And there's no allegations throughout the complaint of a stigma injury. That is something that they've raised on appeal for the first time. That was not the injury pled in the complaint. The case they cite is a First Circuit case, which is in direct conflict with the law for case from this court, saying that the allegations were insufficient to give rise to a cognizable injury. So I don't think they can excuse themselves from the final decision requirement based on the independent injury argument. There's a case pending here. I want to see if you're familiar. BMG Monroe. Versus Village of Monroe. 22 dash 1047. Are you aware of the case and whether it will the issues raised have bearing on this? I apologize. I'm not familiar with it. Submit something later. Wanted your views if you were Not familiar with that one. I did want to briefly address the conspiracy argument, which they're pressing very heavily on appeal to the extent that A.B.Y. is imputing coupons actions to the town to establish traceability. It can't do that here because they didn't plausibly allege a conspiracy. The case law is clear. The conclusory allegations of agreement and action are insufficient. Plaintiff's allegations of paragraph 206 of their complaint, which is a 76 of the record, is that the town and coupon met to concoct the perfect storm of administrative mayhem. I'm not. I think that that's the definition of a vague allegation that doesn't satisfy a conspiracy. The actual factual allegations are that the supervisor provided public information about another government entity at a public meeting at which residents ask questions about it. That he met with coupon, a local community group, and that he presented and made comments about the town's policy of active enforcement of the building code against all applicants and all residents without exception. These are standard activities that any public official engages in, and they're not indicative of an agreement to bring about on a lawful purpose. The records show that the supervisor never exhorted anyone to complain about a terrorist or complain to the REC, and there's no allegation of differential treatment. There's no allegation that these same zoning requirements aren't applied to every single applicant and that the building code isn't enforced the same way. I know they bring up the search warrant comment a lot, and if you read those comments, what the town supervisor said is that that is a tool they use across everyone in the town. Not specific to ABY, because they take an aggressive approach to enforcement of the building code, which is not indicative of discrimination. I see the light is on. If there's any specific questions that the panel has, I'd like to address that. If not, we'll rest on the briefs. Thank you. Thank you. Thank you, Your Honors. Three quick points. I want to start with Judge Parker's question about anti-Semitism. The United States Department of Justice has identified Coupon as an anti-Semitic organization, yet Holman collaborated with them publicly and proudly. And it's just not some vague allegation of a conspiracy. Holman was the keynote speaker at their inaugural meeting on January 10th. And at that meeting, Coupon leadership declared that they had met repeatedly with Holman and that he was, quote, amazing in the process of foreclosing on terrorists from the community. Rarely is there such clear evidence of a conspiracy at the pleading stage. But how does this give you standing? What does this have to do with utility? Sure. So it goes to the credibility of our conspiracy claims, which bear directly on traceability. Because, as we say, the revocation here by the church was a direct result of the carrot and stick conspiracy. And the January 10 meeting provides indirect evidence that such a conspiracy exists. We do, Your Honor, throughout the complaint, including towards the beginning, multiple passages in the complaint. But on the carrot and stick conspiracy, the other side tries to downplay the carrot aspect and to claim that the church didn't in any way interfere or articulate its interest in the property while the contract was pending. That is not correct. And that is not what we allege. Holman declared at the very first public meeting that concerned this contract that the town was, quote, definitely still interested in acquiring the property. And on the day the contract was revoked, he met with the media and declared, hooray, all options are back on the table. And as Judge Parker pointed out, on that very day, our FOIL requests disclosed communications between the church and the town concerning this property. All of this together makes it more than plausible that Coupon worked in concert with Holman to execute a carrot and stick conspiracy to prevent a terrorist from closing the deal and swooping in and acquiring the property for itself. Now on the question of finality, the other side says that if you hold that finality doesn't apply here, you'll eviscerate that requirement as it's applied to religious discrimination claims. That is not correct. The critical question is the nature of the relief that is sought. Here, the injury was complete before the zoning board could issue a final decision. And therefore, any subsequent final decision could not bear upon the requested remedy. And so as this court explained in Sunrise Detox, there are situations in which a plaintiff seeks an injunction to use their property in a particular way or damages because they've been disabled from using the property in a particular way. And in those cases, it makes sense to force the plaintiff to go through the administrative process because it's possible that at the end of the process, they'll get what they want, even if the underlying claim is one of religious discrimination. But in a case- What do you want this to do with Murphy? What should be said on Murphy? Sure. So the way I would read Murphy is that, yes, the finality requirement applies to claims of discrimination, but the nature of the relief that's requested is critical. And that's the caveat that this court built into Murphy in Sunrise Detox. And here, because the crux of our argument is that the discriminatory conspiracy culminated in a revocation that preceded the final decision, of course our requests for relief are entirely independent of any subsequent final decision that might come after the revocation. To apply finality on these facts would serve no logical purpose. And it's not what this court's precedents contemplate, and it's not what the Supreme Court contemplated. But again, there are at least three different ways to rule in our favor on the finality question. Either the zoning board's decision not to decide is final, or it's proof positive of futility because it means the final decision wasn't forthcoming. Or you could jettison the framework because, again, the request for relief could not be impacted by a subsequent final decision. But the key point is that all roads lead to federal jurisdiction. A terrace must be able to vindicate its civil rights claims in court, because if it can't, then that's a green light for towns across this region to engage in discrimination in the land use process and to insulate that discrimination from judicial review. We'd ask the court to reverse. Thank you, counsel. Thank you both. Thank you. We'll take the case up here faster. And that concludes our arguments for today. So I'll pass it to the court. I'm going to pay to adjourn. Court is adjourned.